## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEREMI TAYLOR | : | |
| | : | CIVIL ACTION NO. 2:23-cv-2140 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| THE SOUTHEASTERN PENNSYLVANIA | : | |
| TRANSPORTATION AUTHORITY (SEPTA) | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff Jeremi Taylor ("Plaintiff or "Mr. Taylor") brings this action against Defendant the Southeastern Pennsylvania Transportation Authority ("Defendant" or "SEPTA") for its violations of his rights under the First Amendment of the United States Constitution and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq*.

An observant practitioner of Islam for nearly three decades and a dedicated member of his West Philadelphia community, Mr. Taylor was discriminated against on the basis of religion (Muslim) by SEPTA, his employer of more than fifteen (15) years when, during Ramadan of 2022, a holy month of fasting, introspection, and prayer for the followers of Islam, he was forced to violate his faith by drinking water so as to be able to provide a urine sample for randomized drug testing purposes. Rather than simply agreeing to reschedule the randomized testing, SEPTA's agents insisted that Mr. Taylor drink water and, under a strict timetable, provide a urine sample. When he was unable to produce a sufficient amount of urine on demand, he was further humiliated by being mandated to attend drug rehabilitation and counseling although there was not, and could not have been, a scintilla of evidence to support a claim that he had used or abused any controlled substances.

Adding insult to injury, despite having knowledge of Plaintiff's claims of religious discrimination, as set forth in his duly filed administrative charge, SEPTA once again scheduled Mr. Taylor for "random" testing during Ramadan the following year and engaged in the same discriminatory conduct as before. As a result of SEPTA's discrimination against him on the basis of his religion, Mr. Taylor has experienced emotional distress and physical ailments. He brings this complaint pursuing redress for SEPTA's violations of his constitutional and statutory rights and seeks all remedies available to him at law and equity.

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over the subject matter of this Complaint pursuant to 42 U.S.C. § 1983 and 42 U.S.C. 2000e, *et seq*.

2.      Mr. Taylor has exhausted his administrative remedies in connection with his claims against SEPTA under Title VII of the Civil Rights Act of 1964 ("Title VII").[1]

3.      Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3),  as all of the acts and/or omissions giving rise to the claims set forth in this Complaint occurred herein.

## PARTIES

4.      Plaintiff Jeremi Taylor is an adult citizen of the United States and a resident of the Commonwealth of Pennsylvania.

5.      Defendant SEPTA is a regional public transit authority serving the Philadelphia metropolitan area. It is an agency of the Commonwealth of Pennsylvania.

---

[1] *See* Right to Sue letter from the U.S. Department of Justice, Civil Rights Division, dated March 9, 2023, and attached hereto as Exhibit 1. Pursuant to 42 U.S.C. § 1367, Mr. Taylor will amend this Complaint to include additional claims under the Pennsylvania Human Relations Act, 43 P.S. Labor § 951, *et seq.* ("PHRA"), once he has exhausted his administrative remedies in connection therewith.

6.      SEPTA, as a Commonwealth Agency, is bound by the First Amendment of the United States Constitution and Title VII, to respect its employees' right to practice their respective religions.

7.      At all times relevant to this Complaint, Mr. Taylor was an "employee"[2] of SEPTA, as that term is defined in the relevant statutes.

8.      At all times relevant to this Complaint, SEPTA was Mr. Taylor's "employer,"[3] as that term is defined in the relevant statutes.

9.      At all times relevant to this Complaint, SEPTA, via its agents/servants, deprived Mr. Taylor of his constitutional and statutory rights, as described herein.

10.     SEPTA holds itself out to the public and to its employees as an equal opportunity employer that values and promotes diversity in the workplace.

11.     Per an April 5, 2023, letter[4] from General Manager and CEO Leslie S. Richards to employees concerning antisemitic literature being found on Market-Frankford Line Trains, SEPTA purports to be accepting and respectful of employees of all backgrounds:

> *SEPTA [is] focused on creating a welcoming and inclusive environment for everyone who works [for us]*.  Our [Diversity, Equity, and Belonging] Council has been highlighting the holidays and traditions of different religions and ethnic backgrounds so we can all celebrate who we are and bring our whole selves to work.  I am writing to you on this first day of Passover, a holiday commemorating the escape of the Jewish people from slavery in Egypt.  *This should be a joyous occasion, respected and supported by all – just as Ramadan and Easter should be*.

12.     Per the Diversity and Inclusion Mission Statement[5] posted on its website, SEPTA claims to be "committed to developing and supporting a diverse workforce that can work together to build a strong organization, meet the needs of our customers, and strengthen our service."

---

[2] 42 U.S.C. § 2000e(f); 43 Pa.C.S. § 954(a), (c).
[3] 42 U.S.C. § 2000e(b); 43 Pa.C.S. § 954(b).
[4] *See* letter attached hereto as Exhibit 2. (emphasis added).
[5] SEPTA, *Diversity & Inclusion: Mission Statement*, available at: jobs.septa.org/content/diversity/?locale=en_US (last

13.     The Statement[6] continues:

SEPTA supports a workforce diversity and inclusion program focused on attracting and retaining highly skilled and versatile employees and creating a work environment that encourages all employees to realize their full potential.

Workforce diversity means recognizing and respecting the differences that make each of us unique and valuing the importance of bringing individual talents together to meet organizational objectives. Diversity is defined as, but not limited to, characteristics including national origin, language, race, color, disability, ethnicity, gender, age, religion, sexual orientation, gender identity, socioeconomic status, veteran status, and family structures. It also recognizes that the differences in the way individuals think and problem solve can be catalysts for business innovation and improvement.

Inclusion is defined as fostering a culture that connects each employee to the organization; encourages collaboration, flexibility, and fairness; values the diversity of our employees; and creates an environment where individuals from across the organization are able to participate and contribute their full potential.

## FACTUAL ALLEGATIONS

### Background

14.     Mr. Taylor has been an observant practitioner of Islam for approximately twenty-seven (27) years, having officially converted in 1996 at age 17. He has belonged to the Masjid Al-Mujahideen Mosque in West Philadelphia since that time.[7]

15.     As an observant Muslim, Mr. Taylor observes *halal* dietary laws and abstains entirely from alcohol and all recreational drugs.

16.     In addition, Mr. Taylor typically prays five (5) times per day.

17.     Islam has been Mr. Taylor's sincerely held religious belief for nearly three decades.

18.     Mr. Taylor began working for SEPTA on June 11, 2007.

19.     From 2007 to 2009, Mr. Taylor worked as a General Track Helper.

---

visited June 1, 2023).

[6] *Id.*

[7] *See* letter addressed to SEPTA from Imam Amin Abdul Aziz, attached hereto as Exhibit 3.

4

20.    He then took and passed the test to become a Track Maintainer, Second Class before being promoted to Construction Equipment Operator, Second Class in late 2009. He has worked in that role ever since.

21.    SEPTA presented Mr. Taylor with awards for tenure upon the completion of his fifth, tenth, and fifteenth years as an employee.

**Religious Discrimination by SEPTA – Ramadan 2022**

22.    On the morning of April 6, 2022, Mr. Taylor was instructed by his direct supervisor, Mr. Harry Edminston, to report to SEPTA's medical office for a random drug test.

23.    SEPTA never had any reason(s) to suspect that Mr. Taylor had been using any illicit drugs at any time during his tenure as an employee.

24.    This date fell during the Muslim Holy Month of Ramadan, which ran from April 1, 2022, through May 1, 2022.

25.    During Ramadan, observant Muslims are required to abstain from consuming any food or drink during daylight hours.

26.    This was the first random drug test Mr. Taylor had been subjected to during the entirety of his tenure with SEPTA.

27.    Mr. Taylor reported to SEPTA's medical office at 11:00 a.m. and was given a breathalyzer test, which he passed.

28.    Mr. Taylor was then asked to provide a urine sample. Ms. Lisa Tucker, recognizing that Mr. Taylor was Muslim based on his appearance, asked whether he was fasting for Ramadan. Mr. Taylor replied that he was.

29.    Upon information and belief, Ms. Tucker was not a certified medical tech at the time of this appointment and has previously been the subject of discrimination complaints.

30.     Nevertheless, Mr. Taylor was then told to have a seat and to provide a urine sample within the next three (3) hours.[8]

31.     Ms. Tucker provided Mr. Taylor with a sample jar and stated: "Put some in the cup and put the rest in the toilet."

32.     After approximately two (2) hours, Mr. Taylor was able to provide a urine sample.

33.     Mr. Taylor filled the jar most of the way and handed it back to Ms. Tucker, who filled one testing vial and started to fill another; however, there was only enough urine to fill the second vial about one third of the way.

34.     Upon information and belief, only one vial of urine is needed to conduct the drug screen; the second vial is only needed for confirmatory testing in the event that the initial test comes back positive for one or more controlled substances.

35.     Ms. Tucker then told Mr. Taylor that he had not provided enough urine and would have to provide another sample. She then tossed out the urine sample he had just provided. At that point, Mr. Taylor had no more urine left to provide.

36.     Ms. Tucker told Mr. Taylor that he could "lose [his] job" if he did not produce a urine sample. Ms. Tucker then stated that Mr. Taylor had "refused" to drink water in order to provide a urine sample.

37.     Another SEPTA agent, Ms. Tessa Adler, told Mr. Taylor that he didn't want to risk losing his job over a refusal to provide a urine sample.

38.     Mr. Taylor emphasized that, as an observant Muslim who was fasting for Ramadan, he could not consume any food or drink during daylight hours without violating his religious beliefs.

---

[8] SEPTA requires that the urine sample be provided within three hours of the beginning of the appointment, meaning that Mr. Taylor had to provide it by 2:00 p.m.

39.     Ms. Adler stated to Mr. Taylor: "God will understand"; "You don't want to lose your job"; and there are "a lot" of Muslim SEPTA employees who drink water in order to provide a urine sample during Ramadan.

40.     The Manager of SEPTA's Medical Office, Ms. Paula Brown, then came over and told Mr. Taylor that he had to provide a urine sample or SEPTA would consider it a "refusal" that could jeopardize his job. Ms. Brown further stated that SEPTA could not make an exception for Mr. Taylor.

41.     Mr. Taylor shook his head in disbelief and told Ms. Brown that Ms. Tucker had just poured out his urine sample.

42.     Upon information and belief, SEPTA's policies do not require that declining to drink water in order to provide a urine sample be designated a "refusal."

43.     Ms. Brown stated to Mr. Taylor: "How do we know you're really Muslim? Anyone could claim to be Muslim to avoid the drug testing. We have Muslims come in here and break their fasts all the time."

44.     Ms. Brown then asked another Muslim employee, Momdou "MJ" Jallow, to confirm what she was telling Mr. Taylor. Mr. Jallow then stated to Mr. Taylor: "Many Muslim employees break their fast and drink the water to avoid losing their jobs."

45.     Feeling that he had no choice if he wanted to keep his job and continue to be able to provide for his family, Mr. Taylor proceeded to drink some water in violation of his religious beliefs in order to provide another urine sample.

46.     After drinking several bottles of water,[9] Mr. Taylor was still unable to produce a urine sample. The medical tech, Mr. Steven Schork then indicated on his chart that he had a "shy bladder."

47.     When Mr. Taylor asked what that term meant, he was told that it was "like a refusal." Mr. Taylor then explained that he did not refuse to give a urine sample and that, in fact, had already given one and it had been thrown away by Ms. Tucker.

48.     Next, Mr. Taylor was told that he had to give a blood sample.

49.     While the blood was being drawn, Ms. Brown stated to Mr. Taylor that "SEPTA does not care" about his Ramadan fast and that his chart would indicate a "refusal" to drink water or provide a urine sample.

50.     Finally, around 3:00 p.m., Mr. Taylor was able to provide another urine sample, but the three-hour window for his appointment had expired, so he was still considered to have "refused" to submit a sample. Mr. Taylor then returned to work

51.     Later that afternoon, Mr. Taylor received a telephone call from Ms. Brown, who stated that she spoke with a SEPTA physician, Dr. Erinoff, who asked that Mr. Taylor provide a letter from his Imam indicating that he was observing the Ramadan fast.

52.     Mr. Taylor obtained the requested letter[10] as quickly as possible and provided it to SEPTA within two (2) days.

53.     In the meantime, on the morning of April 7, 2022, Mr. Taylor received a telephone call from SEPTA's Director of Maintenance, Mr. Chester Graham, directing him to report to SEPTA's medical office at 12:00 p.m.

---

[9] Upon information and belief, SEPTA's guidelines provide that a patient should drink no more than forty (40) ounces of water during an appointment. Mr. Taylor consumed more than twice this amount.

[10] *See* Exhibit 3.

54.     Mr. Taylor reported to SEPTA's medical office as directed, and, upon his arrival, was told he would have to provide another blood sample because the sample taken the previous day had not been stored and/or processed correctly.

55.     Before leaving SEPTA's medical office, Mr. Taylor, asked to speak to Ms. Brown, because he was concerned that his job was at risk, but was told that she was not available.

56.     On April 8, 2022, Mr. Taylor provided a copy of his Imam's letter to Ms. Brown. He also provided a copy to Bill Bannon, his Union Representative, the following week.

57.     The following Monday, April 11, 2022, Mr. Taylor received a telephone call from Ms. Brown advising him that he was to meet with SEPTA's medical director, Dr. Jeffrey Erinoff, the following day, April 12, 2022.

58.     On that day, Mr. Taylor brought a copy of the letter from his Imam, a list of all medications he was currently taking, and correspondence from his primary care physician relating to lab work performed on March 11, 2022, which indicated that he was dehydrated.

59.     Mr. Taylor provided all of this documentation to Dr. Erinoff and also informed him that he is diabetic, a condition that can cause sugar to be present in one's urine.

60.     Dr. Erinoff then advised Mr. Taylor that he did not see his inability to provide a urine sample as a medical issue, but as a religious issue that must be reviewed by others at SEPTA.

**Required Participation In Drug Counseling Program**

61.     On Friday April 15, 2022, Mr. Taylor received another phone call from Ms. Brown, who stated that he would be suspended from work with reduced pay pending the completion of a drug counseling program.

62.     Mr. Taylor asked Ms. Brown whether she was serious and advised that he does not use any recreational drugs or alcohol and never has.

9

63.     Ms. Brown stated that, "this is SEPTA policy" and, further, that Mr. Taylor could either comply with the request or face termination.

64.     Presented with this choice, Mr. Taylor elected to participate in the drug counseling program so as to avoid jeopardizing his job.

65.     On April 22, 2022, Mr. Taylor had his first appointment with the drug counseling specialist, Ms. Kristina M. Kotecha.

66.     Ms. Kotecha then referred Mr. Taylor to a psychiatrist, Dr. Carter Cloyd, who concluded that he did not have any substance abuse issues and stated that it was not necessary for him to participate in the drug counseling program.

67.     Mr. Taylor also saw Dr. Cloyd on two occasions after his return to work.

68.     Nevertheless, Mr. Taylor completed the program satisfactorily and was ultimately permitted to return to work on May 24, 2022.

69.     Between April 15, 2022, and May 23, 2022, Mr. Taylor was forced to use approximately forty (40) of his accumulated personal and/or sick days and received only 60% of his normal pay, as he was considered by SEPTA to be on sick leave.

70.     As part of the process of returning to work for SEPTA, Mr. Taylor was asked to undergo yet another drug screen so that he could be cleared to go back to his regular job duties.

71.     By this time, Ramadan had concluded, so he did not anticipate any further issues or religious discrimination in dealing with SEPTA's medical office personnel. Unfortunately, he was sorely mistaken.

72.     On May 20, 2022, Mr. Taylor reported back to medical and was told that he had to provide another urine sample.

73.   Because SEPTA had groundlessly claimed to suspect that Mr. Taylor had been using illicit substances, he was forced to provide the urine sample under the observation of a male SEPTA employee (name unknown).

74.   The medical employee followed Mr. Taylor into the lavatory, instructed him to drop his pants and underwear all the way to his ankles and lift up his shirt so as to verify that he was not concealing any contraband, and directly observed him passing urine into the collection jar.

75.   Mr. Taylor regards this practice as yet another instance of religious discrimination by SEPTA, insofar as it required him to violate the Muslim practice of maintaining bodily modesty in front of other persons.

**Religious Discrimination by SEPTA – Ramadan 2023**

76.   In 2023, Ramada ran from March 22 through April 23.

77.   On March 22, 2023, the very first day of Ramadan, Mr. Taylor received a telephone call from his Mr. Edminston directing him to report to SEPTA'S medical office for yet another a drug test.

78.   SEPTA never had any reason(s) to suspect that Mr. Taylor had been using any alcohol or illicit drugs at any time during his tenure as an employee.

79.   Mr. Taylor reported to medical and asked the medical staff if he could come back at night to provide a urine sample so that he could avoid any further violations of his religious rights on the part of SEPTA.

80.   He was told that he could not do so but was not provided with any reason for this.

81.   Next, Mr. Taylor took and passed a breathalyzer test.

82.   Mr. Taylor was then asked to provide a urine sample and, as before, was unable to do so because he had been fasting in observance of Ramadan.

83.     Then, because he was running out of time on the three-hour time limit SEPTA imposes for providing a urine sample, he decided to drink water in order to be able to provide a urine sample and not risk being suspended again and/or losing his job.

84.     On April 3, 2023, Mr. Taylor provided a copy of a letter[11] from his attorney to his immediate supervisor, Harry Edminston, and to Chester Graham, SEPTA's director of Maintenance. The letter indicated that any attempts on the part of SEPTA and/or its agents to coerce him into consuming any food or drink during daylight hours in violation of his religious beliefs would constitute a violation of the First Amendment, as well as federal, state, and local antidiscrimination laws.

85.     Mr. Taylor was made to submit to "random" drug testing on three additional dates: April 11, 2023, April 24, 2023, and May 3, 2023.

86.     Mr. Taylor was never asked to present identification when he went to any of his medical appointments. Upon information and belief, this is a violation of SEPTA policy on the part of its agents in the medical office.

87.     SEPTA's illegal, discriminatory conduct was even more egregious this time around because it was on actual notice that its conduct was violative of Mr. Taylor's constitutional and statutory rights, as he had filed his administrative charge[12] alleging as much some eight (8) months earlier and SEPTA had filed a response[13] thereto on January 5, 2023.

88.     That is, SEPTA knowingly engaged in the same very same discriminatory conduct one year later, even in the face of Mr. Taylor's formal administrative charge alleging religious discrimination.

---

[11] *See* letter from Joshua M. Baker, Esq. addressed to SEPTA, dated January 20, 2023, attached hereto as Exhibit 4.
[12] *See* Mr. Taylor's administrative charge, attached hereto as Exhibit 5.
[13] *See* SEPTA's response to Mr. Taylor's administrative charge, attached hereto as Exhibit 6.

89.     While Mr. Taylor appreciates that SEPTA must conduct drug screens of its employees in order to comply with all applicable regulations and ensure their safety as well as that of the public, the procedures he was forced to submit to were invasive, unnecessary, discriminatory, harassing, and illegal.

90.     With a little forethought on the part of SEPTA Officials, the discrimination Mr. Taylor faced could easily have been completely avoided.

91.     For example, SEPTA could have allowed Mr. Taylor to provide a urine sample outside of daylight hours or at some point during the eleven (11) months of the year when he is not fasting in observance of Ramadan.

92.     Such an accommodation would have imposed no burden whatsoever on SEPTA, let alone an undue burden.

93.     Further, SEPTA's medical staff regarding Mr. Taylor with suspicion in connection with a drug screening was highly offensive to him as a Muslim, as he does not use any recreational drugs or alcohol and never has.

94.     SEPTA's discriminatory conduct has negatively impacted Mr. Taylor's physical and emotional well-being.

95.     Because of SEPTA's discriminatory conduct, Mr. Taylor has experienced a great deal of stress and anxiety about being able to provide for his family, as he was not able to earn as much money as he normally does during his forced leave of absence from SEPTA.

96.     The stress of this ordeal has also caused Mr. Taylor to develop physical ailments.

97.     On May 17, 2022, Mr. Taylor began having chest pains. These symptoms did not improve over the following days and, on May 21, 2022, fearing that he was having a heart attack, he went to the emergency room at Lankenau Hospital in Wynnewood, PA.

98.     The medical staff there believed that his symptoms were the result of muscular soreness and told him to follow up with his primary care physician the following week.

99.     Between visiting the emergency room and his appointment with his primary care physician, Mr. Taylor developed a large rash and numerous sores on his left side and back.

100.     When Mr. Taylor went to see his primary care physician, Dr. Peter Chung, on May 26, 2022, he diagnosed the rash as shingles, which condition he believes could be attributable to stress.[14]

101.     Since May of 2022, Mr. Taylor has had large, painful sores and rashes on his armpits, back, and right hand, which Dr. Chung says may take months to resolve.

102.     In addition, since SEPTA discriminated against him on the basis of his religion, Mr. Taylor's blood pressure, which was already fairly high, has gotten even higher.

103.     Mr. Taylor was already on medication to control his high blood pressure and Dr. Chung believes this condition may have been exacerbated by stress.

104.     As a result, Dr. Chung has referred Mr. Taylor to a cardiovascular specialist, Dr. Mostafa R. Amer, in order to try to get his blood pressure under control.

105.     Mr. Taylor had a rash and numerous sores for some ten (10) months.

106.     His symptoms have improved somewhat with treatment and medication. He has had no outbreaks since the end of February of 2023, but still wears a medical undershirt to prevent skin irritation.

107.     Mr. Taylor has also sought psychological counseling to deal with the stress and depression he has been experiencing as a result of SEPTA's illegal discrimination.

108.     On April 15, 2023, he had his first appointment with Mallory Christman, PsyD.

---

[14] *See* letter from Dr. Peter Chung, attached hereto as Exhibit 7.

109.   Mr. Taylor continues to treat with Dr. Christman and plans to do so indefinitely.

## CLAIMS FOR RELIEF

### COUNT I
**Plaintiff v. Defendant**
**Federal Civil Rights Violations Under 42 U.S.C. § 1983**

110.   Mr. Taylor hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

111.   As a direct and proximate result of Defendant's conduct, Mr. Taylor's right under the First Amendment's free exercise clause to observe his religious practices was violated.

112.   Specifically, SEPTA, an agency of the Commonwealth of Pennsylvania, coerced Mr. Taylor into drinking water in violation of his Ramadan fast in both 2022 and 2023.

113.   SEPTA also engaged in other conduct violative of Mr. Taylor's constitutional rights, as described above.

114.   Mr. Taylor is entitled to damages to compensate him for SEPTA's illegal and discriminatory conduct, as well as attorney's fees and costs incurred in the prosecution of this suit, pursuant to 42 U.S.C. § 1988.

### COUNT II
**Plaintiff v. Defendant**
**Religious Discrimination Under Title VII of the Civil Rights Act of 1964**

115.   Mr. Taylor hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

116.   As a direct and proximate result of the Defendant's conduct, Mr. Taylor's rights under Title VII to observe his religious practices was violated.

15

117.   Specifically, SEPTA, an agency of the Commonwealth of Pennsylvania, coerced Mr. Taylor into drinking water in violation of his Ramadan fast in both 2022 and 2023.

118.   SEPTA's refusal to schedule random drug testing in the evening or during a time other than the sacred month of Ramadan constituted a refusal to engage in the interactive process required pursuant to Title VII.

119.   Defendant SEPTA did not make a good-faith effort to reasonably accommodate Plaintiff's religious belief.

120.   Accommodating Plaintiff's reasonable requests for scheduling of random drug testing would have imposed no burden, much less an undue burden, on SEPTA.

121.   SEPTA also engaged in other conduct violative of Mr. Taylor's constitutional rights, as described above.

122.   Mr. Taylor is entitled to damages to compensate him for SEPTA's illegal and discriminatory conduct.

**COUNT III**
**Plaintiff v. Defendant**
**Request for Injunctive Relief**

123.   Mr. Taylor hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

124.   As described herein, SEPTA has deliberately violated Mr. Taylor's right to observe his religious practices on numerous occasions in violation of the First Amendment and Title VII.

125.   SEPTA has continued to violate Mr. Taylor's right to observe his religious practices even after being put on notice that this conduct is illegal when he filed a formal administrative charge challenging it.

126.    Because SEPTA has continuously and untenably refused to respect Mr. Taylor's statutory and constitutional rights, he requests that this Court enter an Order enjoining SEPTA from engaging in such discriminatory conduct as to him or any other similarly situated employee.

## JURY DEMAND

127.    Plaintiff demands a trial by jury as to each cause of action and claim articulated herein.

**WHEREFORE**, Plaintiff demands judgment against Defendant, as to each count, along with compensatory damages, costs of suit, attorney's fees, interest, punitive damages, and such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

DATE: June 5, 2023

*S/ Patricia V. Pierce*
Patricia V. Pierce, Esq.
Joshua M. Baker, Esq.
**WEIR GREENBLATT PIERCE LLP**
1339 Chestnut Street, Suite 500
Philadelphia, Pennsylvania 19107
T: 215-665-8181 / F: 215-665-8464
*Attorneys for Plaintiff Jeremi Taylor*

# EXHIBIT 1

U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

March 09, 2023

Mr. Jeremi Taylor
c/o Joshua M. Baker, Esquire
Law Offices of Weir, Greenblatt & Pierce
1339 Chestnut Street
Suite 500
Philadelphia, PA  19107

Re:  EEOC Charge Against SEPTA
       No. 530202206467

Dear Mr. Taylor:

    Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

    If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

    The investigative file pertaining to your case is located in the EEOC Philadelphia District Office, Philadelphia, PA.

    This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                        Sincerely,


                        Kristen Clarke
                        Assistant Attorney General
                        Civil Rights Division

                   by        /s/ Karen L. Ferguson
                        Karen L. Ferguson
                        Supervisory Civil Rights Analyst
                        Employment Litigation Section


cc: Philadelphia District Office, EEOC
     SEPTA

# EXHIBIT 2

# LETTER FROM GM & CEO LESLIE S. RICHARDS - SHARED ON 4/5



To All SEPTA employees,

Some very disturbing news has come to my attention. Yesterday, a rider reported that antisemitic literature was placed on our Market-Frankford Line trains.  Let me be very clear: Hate speech of any kind is not tolerated by SEPTA.

The literature was removed by the passenger and our SEPTA Transit Police have reviewed cameras on the system to determine who might have placed the flyers on the train.  If any of you see any kind of hate being spread on SEPTA, please alert our police and remove any materials.  Remember that the SEPTA TransitWatch App makes it simple and easy to make a report.

So many of us at SEPTA are focused on creating a welcoming and inclusive environment for everyone who works at the Authority.  Our DEB Council has been highlighting the holidays and traditions of different religions and ethnic backgrounds so we can all celebrate who we are and bring our whole selves to work.

I am writing to you on this first day of Passover, a holiday commemorating the escape of the Jewish people from slavery in Egypt.  This should be a joyous occasion, respected and supported by all – just as Ramadan and Easter should be.

I encourage all of us to do our part to bring respect and understanding of others to all we do.  And please feel free to share your traditions with your co-workers.  Greater understanding helps us embrace our differences.

Sincerely,

Leslie S. Richards

GM/CEO

# EXHIBIT 3

السلام عليكم    **Islamic Chaplaincy and Pastoral Care**

Peace be upon you

---

Date:            April 8, 2022


In the Name of Allah, the Most Gracious, the Most Merciful


To:              SEPTA
                 1234 Market Street
                 Philadelphia, PA  19107
                 Attention:  Mr. Bill Bannon, Union Rep
                 Attention:  Mr. Chester Graham, Director of Utilities
                 Attention:  Ms. Paula Brown, Drug & Human Resource Program Manager

Name of Muslim:  Jeremi Taylor, Employee ID  14208

Position:        Construction Equipment Operator 2nd Class

To Whom It May Concern.

Jeremi Taylor is Muslim in Good Standing and believes in the Quran (Muslim Holy Scriptures) that tells Muslims to abstain from food and drink during the day light hours for this blessed month of Ramadan. The Quran says 'Fasting is prescribed for you as it was prescribed for those before you'.  This is Jeremi's personal religious belief.  Please recognize his rights.

Thank you for your attention in this matter.

Sincerely,

*Amin Abdul Aziz*

Amin Abdul Aziz, Pastoral Care Director

بسم الله الرحمن الرحيم
**Amin Abdul Aziz**
Director of Pastoral Care
215.783.9649        triplea60@aol.com


**413 S. 60th Street ▪ Philadelphia, PA 19143 ▪ 215-783-9649**

# EXHIBIT 4



1339 CHESTNUT STREET • SUITE 500

PHILADELPHIA, PA 19107

(215) 665-8181

(215) 665-8464 FAX

WGPLLP.com

January 20, 2023

**RE:** *Religious Rights of SEPTA Employee Jeremi Taylor*

To Whom it May Concern:

Please be advised that this firm represents Mr. Jeremi Taylor in connection with his pending religious discrimination claim against SEPTA. This claim stems from an incident that occurred on April 6, 2022, during which certain SEPTA employees coerced Mr. Taylor into drinking water during daylight hours while he was observing the Islamic holy month of Ramadan, a time during which observant Muslims are not permitted to consume food or drink between sunrise and sunset.

This year, Ramadan runs from March 22 through April 21. Any attempts on the part of SEPTA or its agents to coerce Mr. Taylor into consuming any food or drink during daylight hours while he is observing Ramadan would constitute a further violation of his rights under the First Amendment, as well as local, state, and federal antidiscrimination laws. Moreover, any such actions would subject SEPTA to further liability. On behalf of Mr. Taylor, I request that you kindly refrain from engaging in any such conduct.

Thank you for your time and attention. Please contact me with any questions or concerns you may have.

Regards,

*S/ Joshua M. Baker*
Joshua M. Baker, Esq.
jbaker@wgpllp.com

# EXHIBIT 5



Weir
Greenblatt
Pierce
LLP

PENNSYLVANIA · NEW JERSEY · DELAWARE · NEW YORK

1339 CHESTNUT STREET · SUITE 500
PHILADELPHIA, PA 19107
(215) 665-8181
(215) 665-8464 FAX
WGPLLP.com

Joshua M. Baker, Esquire
jbaker@wgpllp.com
(215) 665-8181

August 19, 2022

VIA ELECTRONIC MAIL
(PHILATTY@eeoc.gov)

Equal Employment Opportunity Commission
Philadelphia District Office
801 Market Street
Suite 1300
Philadelphia, PA  19106-2515

Re:   Charge Filing – Jeremi Taylor v. SEPTA

Dear Sir or Madam:

Please accept this letter as my formal entry of appearance on behalf on Charging Party, Jeremi Taylor.

Enclosed please find the following documents relating to a Charge of Discrimination to be filed on behalf of my client, Jeremi Taylor: (1) a Charge of Discrimination, including Attachment A; (2) the Form to Request Dual-Filing with Pennsylvania Human Relations Commission; and (3) an Attorney Referred Charge Checklist.

Please do not hesitate to contact me if you require any additional information.  Thank you for your assistance.

Sincerely,

WEIR GREENBLATT PIERCE LLP

Joshua M. Baker, Esquire

Enclosures
cc:    Jeremi Taylor (via electronic mail w/ enclosures)



### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Philadelphia District Office
Attorney Referred Charge Checklist

| | |
|---|---|
| Your Name (Charging Party's Attorney's Name): | **Joshua M. Baker** |
| Your e-mail address (Charging Party's Attorney's e-mail): | jbaker@wgpllp.com |
| Your firm's name & address: | Weir Greenblatt Pierce LLP; 1339 Chestnut St., Ste. 500, Philadelphia, PA 19107 |

| | | |
|---|---|---|
| Date Submitted: | **August 19, 2022** | **EEOC Office Use Only**<br>Date Received: |
| Location of Alleged Discrimination | SEPTA<br>1234 Market Street<br>Philadelphia, PA 19107 | |
| Date(s) of Alleged Discrimination: | April 6, 2022 - Present | |

| | |
|---|---|
| Statute/s: | Basis (protected class/es): Religion (Muslim)<br>Issue (alleged discriminatory action/s): Forced violation of religious observance. |
| Charging Party | Name: Mr. Jeremi Taylor<br>E-mail address: jaytaylor92@yahoo.com<br>National Origin:          Race:          Gender: M          DOB: 11/13/1977 |
| Respondent | Name of Respondent: SEPTA<br>Name of Respondent official who should receive the Charge:<br>Address of Respondent official: 1234 Market St, Philadelphia, PA 19107<br><br>E-mail address of Respondent official: |

| | Yes | No |
|---|---|---|
| Is this an Amended Charge: | | X |
| If yes, provide: Charge No. | | |
| Is this related to a previously filed Charge: | | X |
| If yes, provide: Charge No. | | |
| Have you previously filed this matter with EEOC or another agency: | | X |
| If yes, provide name of agency & date of filing: | | |
| Prefer Mediation | X  Yes | Need more info. |
| Requesting Immediate Issuance of Right to Sue | Yes | X  No |

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | |

Pennsylvania Human Relations Commission _____ and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Mr. Jeremi Taylor | (267) 671-8135 | 11/13/1977 |

| Street Address | City, State and ZIP Code |
|---|---|
| 7626 Sherwood Road | Philadelphia, PA 19151 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| SEPTA | >9,500 | 215-580-7800 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1234 Market St, Philadelphia, PA 19107 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☒ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                    Latest
April 6, 2022       Present

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

See Attachment A.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| August 19, 2022      *Jeremi Taylor* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date            *Charging Party Signature* | |

## Attachment "A"

### Jeremi Taylor v. SEPTA

**INTRODUCTION**

I, Jeremi Taylor, hereby bring this charge of discrimination on the basis of religion against my employer, the Southeastern Pennsylvania Transportation Authority ("SEPTA"). In violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000a, *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. 951, *et seq.*, and the Philadelphia Fair Practices Ordinance ("PFPO"), Phila. Code § 9-1101, *et seq.*, SEPTA has discriminated against me based on my religious affiliation (Muslim).

I have been an observant practitioner of Islam for over 25 years. On April 6, 2022, as part of a drug screen, SEPTA employees forced me to break my Ramadan fast by requiring me to drink water during daylight hours in order to produce a urine sample. I was further discriminated against on the basis of my religion when, on May 20, 2022, I was forced to provide another urine sample while a male SEPTA employee looked on and observed my every move, violating my religious practice of maintaining modesty in front of others.

I have worked for SEPTA for fifteen (15) years and, while this is the first time I have personally been discriminated against on the basis of my religion, I am aware of numerous other Muslim employees who have faced discrimination in the past in connection with being permitted to wear their religious attire at work and/or to observe certain religious holidays. I hereby request that the EEOC/PHRC investigate this matter and issue a finding that SEPTA has discriminated against me on the basis of my religion, as averred herein.

## BACKGROUND

I am a 44-year-old native of West Philadelphia. I was born and raised in this City and graduated from North Philadelphia's Simon Gratz High School in 1996. Following my graduation, I attended classes at the Community College of Philadelphia before earning a certificate from the Delaware Valley Trade School in 2004. I have been Muslim since I officially converted to Islam in 1996 at age 17 and have belonged to the Masjid Al-Mujahideen Mosque in West Philadelphia since that time.[1] I observe *halal* (Muslim dietary laws) and attend Friday services at my Mosque as often as I can. In accordance with my Islamic religious practices, I do not eat pork or other *haram* ("forbidden") foods and abstain entirely from alcohol and recreational drugs. I try to pray five (5) times per day, and I wear my *kufi* (traditional religious skullcap) during Ramadan. While I was not raised from childhood as a Muslim, some of my family members were practicing Muslims, so I have been familiar with the religion for most of my life. Islam has been my sincere and deeply held religious belief for nearly three decades.

I have been married to my wife, Doshia Taylor since 2006. We have three children together: a daughter, Sanaa, 17, and two sons, Sybre, 13; and Markel, 22. My wife also has another son, Shakir, 28, from a previous relationship, whom I've known since he was nine years old. Doshia works in human resources management at the Children's Hospital of Philadelphia ("CHOP"). She is Christian and we have raised our children with the freedom to become involved in either or both faiths, as they see fit. I am heavily involved in my community in West Philadelphia, volunteering as a children's football coach, mentoring youth in the community, and helping my neighbors access housing, childcare, mental health counseling, healthcare services, food assistance, and other resources.

---

[1] Refer to letter addressed to SEPTA from Imam Amin Abdul Aziz, attached hereto as Exhibit A.

I began working for SEPTA on June 11, 2007, over fifteen (15) years ago. From 2007 to 2009, I worked as a General Track Helper. I then took and passed the test to become a Track Maintainer, Second Class before being promoted to Construction Equipment Operator, Second Class in late 2009. I have worked in that role ever since. SEPTA presented me with awards for tenure upon the completion of my fifth and tenth years as an employee.

I served as a Union Representative for the Transport Workers Union, Local 234 ("TWU") from 2012 through 2017, having been elected to that role by the other members of the Union. In that capacity, I helped other SEPTA workers get new positions and/or maintain positions they already held, aided in conflict resolution between workers and management, and advised SEPTA concerning existing and proposed employee safety protocols.

## RELIGIOUS DISCRIMINATION BY SEPTA

### *Forced Violation of Ramadan Fast*

On the morning of April 6, 2022, I was instructed by my manager to report to SEPTA's medical office for a random drug test. This date fell during the Muslim Holy Month of Ramadan, which ran from April 1, 2022, through May 1, 2022. During Ramadan, observant Muslims are not permitted to consume any food or drink during daylight hours. This was the first random drug test I was directed to take during my tenure with SEPTA. I reported to the medical office at 11:00 a.m. and was given a breathalyzer test, which I passed. I was then asked to provide a urine sample. I advised that I was fasting for Ramadan and could not produce a urine sample at that exact moment.

The medical tech, Stephen Schork, seemed confused, so another tech, Lisa Tucker, explained what Ramadan is. Nevertheless, I was then told to have a seat and to provide a urine sample within the next three hours. For whatever reason, SEPTA requires that the urine sample be

3

provided within three hours of the beginning of the appointment, meaning that I had to provide it by 2:00 p.m.

After approximately two hours, I was ready to provide a urine sample. I advised the medical tech of this and was given a jar in which to provide the sample. I filled the jar most of the way and handed it back to the medical tech. She filled one testing vial and started to fill another, but there was only enough urine to fill the second vial about one third of the way. She told me that I had not provided enough urine and that I would have to provide another sample. She then tossed out the urine sample I had just provided. At that point, I had no more urine left to provide.

The manager of the medical office, Ms. Paula Brown, overhead my discussions with the medical tech. She approached me and told me that I could lose my job if I did not produce a urine sample. Ms. Brown and others then stated that I had "refused" to drink water. I advised that I was an observant Muslim who was fasting for Ramadan and so could not consume any food or drink during daylight hours without violating my religious beliefs.

Ms. Brown then told me that I had to provide a urine sample or it would be considered a "refusal" that could jeopardize my job. Ms. Tucker, said to me that "God will understand," "you don't want to lose your job," and that there are "a lot" of Muslim SEPTA employees who drink water in order to provide a urine sample during Ramadan. This comment was overheard by a Muslim employee, Momdou "MJ" Jallow, who stated "many Muslim employees drink the water to avoid losing their jobs."

Feeling that I had no choice if I wanted to keep my job and continue to be able to provide for my family and in violation of my religious beliefs relating to my Ramadan fast, I proceeded to drink some water in order to provide another urine sample. After drinking several bottles of water, I was still unable to produce a urine sample. Mr. Schork indicated on my chart that I had a "shy

bladder." When I asked what that meant, they told me it was "like a refusal." I explained that I did not refuse to give a urine sample and that, in fact, I had already given a urine sample and it had been thrown away by Ms. Tucker.

Next, I was told I had to give a blood sample. While the blood was being drawn, I was told by Ms. Brown that "SEPTA does not care" about my Ramadan fast and that my chart would indicate a "refusal" to drink water or provide a urine sample. Finally, around 3:00 p.m., I was able to provide another urine sample, but the three-hour window for my appointment had expired, so I was still considered to have "refused" the test. I then returned to work.

Next, I got a call from Ms. Brown. She stated that she spoke with a SEPTA doctor who asked that I provide a letter from my Imam indicating that I was observing the Ramadan fast. I obtained such a letter[2] as quickly as possible and provided it to SEPTA within two (2) days. The following day, April 7, 2022, I got a call from my director, Chester Graham, directing me to report to medical at 12:00 p.m.

When I arrived at medical, I was told I had to provide another blood sample because they had not stored and/or processed it correctly the previous day. Before leaving medical, I asked to speak to Ms. Brown, but was told that she was not available. I obtained the requested letter from my Imam on the same day. On April 8, 2022, I provided a copy thereof to Ms. Brown. I also provided a copy to Bill Bannon, my Union Representative, the following week.

The following Monday, April 11, 2022, I got a phone call from Ms. Brown advising that I was to meet with a SEPTA doctor the next day, April 12, 2022. On that day, I brought my Imam's letter, a list of all medications I was currently taking, and correspondence between me and my primary care physician relating that lab work I had done on March 11, 2022, which indicated that

---

[2] Refer to Exhibit A.

I was dehydrated. I provided all of this documentation to the SEPTA doctor and also informed him that I am diabetic, which condition can cause sugar to be present in one's urine. The doctor then advised me that he did not see my inability to provide the urine sample as a medical issue, but as a religious issue that must be reviewed by others at SEPTA.

On Friday April 15, 2022, I received another phone call from Ms. Brown, who stated that I would be suspended from work without pay pending the completion of a drug counseling program. I asked Ms. Brown if she was serious and advised her that I do not use any recreational drugs or alcohol and never have. She stated that, "this is SEPTA policy" and, further, that I could either comply with the request or face termination. Presented with this choice, I elected to participate in the drug counseling program so as to keep my job.

My first appointment with the drug counseling specialist, Kristina M. Kotecha, was on April 22, 2022. Ms. Kotecha then referred me to a psychiatrist, Dr. Carter Cloyd, who concluded that I did not have any substance abuse issues and stated that it was not necessary for me to participate in the drug counseling program. Nevertheless, I completed the program satisfactorily and was permitted to return to work on May 24, 2022. Between April 15, 2022, and May 23, 2022, I was forced to use my accumulated sick days and received only 60% of my normal pay, as I was considered by SEPTA to be on sick leave.

While I understand that SEPTA must conduct drug screens of its employees in order to comply with regulations and ensure their safety and that of the public, the procedures I was made to contend with were invasive, unnecessary, and discriminatory. With a little forethought on the part of SEPTA Officials, this situation could easily have been completely avoided. Further, the clinic staff regarding me with suspicion in connection with this drug screen was highly offensive to me as a Muslim because I do not use any recreational drugs or alcohol and have never done so.

### *Forced Violation of Islam's Modesty Tenets*

As part of the process of returning to work for SEPTA, I was asked to provide yet another urine sample so that I could be cleared to go back to my regular job duties. By this time, Ramadan had concluded, so I did not anticipate any further issues or discrimination in dealing with SEPTA and its medical personnel. Unfortunately, I was sorely mistaken.

On May 20, 2022, I reported back to medical. I was told that I had to provide another urine sample. Because SEPTA had groundlessly claimed to suspect that I had been using illicit substances, they forced me to provide the urine sample while a male worker watched the whole time. Specifically, he followed me into the lavatory, watched me undress so as to verify that I was not concealing any contraband, and directly observed me passing the urine sample into the jar. I regard this as yet another instance of religious discrimination by SEPTA, insofar as it required me to violate the Muslim practice of maintaining bodily modesty in front of other persons.

## DAMAGES

SEPTA's discriminatory conduct has traumatized me and has caused a great deal of stress for the other members of my family. Further, SEPTA's conduct has negatively impacted both my physical and mental health. I experienced a great deal of stress and anxiety about being able to provide for my family because I was not able to earn as much money as I normally do during my forced leave of absence from SEPTA. The stress of this ordeal has also caused me to develop physical ailments.

On May 17, 2022, I began having chest pains. These symptoms did not improve over the following days and, on May 21, 2022, fearing that I was having a heart attack, I went to the emergency room at Lankenau Hospital in Wynnewood, PA. The medical staff there believed that

7

my symptoms were the result of muscular soreness and told me to follow up with my primary care physician the following week. Between visiting the emergency room and my appointment with my primary care physician, I developed a large rash and numerous sores on my left side and back.[3]

When I went to see my primary care physician, Dr. Peter Chung, on May 26, 2022, he diagnosed the rash as shingles, which condition he believes could be attributable to stress.[4] Since May of this year, I have had large, painful sores and rashes on my armpits, back, and right hand, which Dr. Chung says may take months to clear up. In addition, since SEPTA discriminated against me on the basis of my religion, my blood pressure, which was already fairly high, has gotten even higher. I am already on blood pressure medication and Dr. Chung believes this condition may have been exacerbated by stress. As a result, he has referred me to a cardiovascular specialist so that I can try to get my blood pressure under control. During the relevant time period, I did not experience any other significant life events that contributed to my stress. I still have a rash and numerous sores. My symptoms have not improved.

## CONCLUSION

I hereby aver under penalty of perjury that the foregoing factual averments are true and correct to the best of my knowledge, information, and belief. I respectfully request that the EEOC/PHRC investigate this matter at once and issue a finding that SEPTA violated my rights under Title VII, the PHRA, and the PFPO to be free from discrimination on the basis of religion.

JEREMI TAYLOR
Complainant

---

[3] Refer to photographs of the rash and sores, attached as Exhibit B.
[4] Refer to letter addressed to my Counsel from Dr. Chung, attached as Exhibit C.

# EXHIBIT A

السلام علیکم   **Islamic Chaplaincy and Pastoral Care**

Peace be upon you

---

Date:             April 8, 2022


In the Name of Allah, the Most Gracious, the Most Merciful


To:               SEPTA
                  1234 Market Street
                  Philadelphia, PA  19107
                  Attention:  Mr. Bill Bannon, Union Rep
                  Attention:  Mr. Chester Graham, Director of Utilities
                  Attention:  Ms. Paula Brown, Drug & Human Resource Program Manager

Name of Muslim:   Jeremi Taylor, Employee ID  14208

Position:         Construction Equipment Operator 2nd Class

To Whom It May Concern.

Jeremi Taylor is Muslim in Good Standing and believes in the Quran (Muslim Holy Scriptures) that tells Muslims to abstain from food and drink during the day light hours for this blessed month of Ramadan. The Quran says 'Fasting is prescribed for you as it was prescribed for those before you'.  This is Jeremi's personal religious belief.  Please recognize his rights.

Thank you for your attention in this matter.

Sincerely,

*Amin Abdul Aziz*

Amin Abdul Aziz, Pastoral Care Director

**Amin Abdul Aziz**
Director of Pastoral Care
215.783.9649        triplea60@aol.com


**413 S. 60th Street  ▪  Philadelphia, PA  19143  ▪  215-783-9649**

# EXHIBIT B





EXHIBIT C

**Letter by Chung, Peter, MD on 8/3/2022**



## Main Line HealthCare
### Physician Network

MAIN LINE HEALTHCARE PRIMARY CARE IN WYNNEWOOD

306 E. LANCASTER AVENUE
SUITE 400
WYNNEWOOD PA 19096
Phone 484-476-7222
Fax  484-476-7853


August 3, 2022

Jeremi M Taylor
7626 Sherwood Road
Philadelphia PA 19151


To Whom It My Concern,

Mr Jeremi Taylor is my patient in Internal Medicine.  He has been my patient since 2013 and I am familiar with his medical conditions.  Jeremi has been informing me of the increased stress he has been feeling from work for the past few months.  On May 26, 2022, Jeremi came into my office with a rash which turned out to be shingles.  Shingles can be brought about in times of increased physical or emotional stress. Also, Jeremi's blood pressure has been difficult to control and I have had to send to a cardiovascular specialist to get a better control over his blood pressure readings.  Increased blood pressure can also be a sign of increased stress in his life.

If you have any questions or concerns, please do not hesitate to call.


Sincerely,

*Peter Chung*

Peter Chung, MD

**Information For Complainants & Election Option**
**To Dual File With The**
**Pennsylvania Human Relations Commission**

## Jeremi Taylor       v.  SEPTA

EEOC Charge No.   _____

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHCR) under the Pennsylvania Human Relations Act.  Filing your charge with the PHRC protects your state rights, especially since there may be circumstances in which state and federal laws and procedures vary in manner which could affect the outcome of your case.

Complaints filed with PHRC must be filed within 180 days of the act(s) which you believe are unlawful discrimination.  If PHRC determines that your PHRC complaint is untimely, it will be dismissed.

If you want your charge filed with PHRC, including this form as part of your EEOC charge, with your signature under the verification below, will constitute filing with PHRC.  You have chosen EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept EEOC's finding.  If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to file a request for preliminary hearing with PHRC

Since you have chosen to file your charge first with EEOC, making it the primary investigatory agency, the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year of filing with PHRC, you have the right to file your complaint in state court.  PHRC will inform you of these rights and obligations at that time.

### [**Sign and date appropriate request below**]

I want my charge filed with PHRC.  I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint.  I request EEOC to transmit it to PHRC.

*I understand that false statements in this complaint are made subject to the penalties of 18 Pa.C.S. §4909, relating to unsworn falsification to authorities.*

_Jeremi Taylor_____
Signature and Date

*I do not want my charge dual filed with PHRC.*

_____
Signature and Date

# EXHIBIT 6

**COMMONWEALTH OF PENNSYLVANIA**
**GOVERNOR'S OFFICE**
**PENNSYLVANIA HUMAN RELATIONS COMMISSION**


Jeremi Taylor,                                    :
      Complainant                         :
                                    :
                                      : **PHRC Case No. 202200917**
                   V.                         :
                                        :
Southeastern Pennsylvania Transportation Authority
      Respondent                          :
                                        :


## ANSWER


**Paragraph I**
Respondent denies this allegation.
Respondent denies Complainant was subjected to discrimination based on his religious affiliation (Muslim).


**Paragraph II**
Respondent denies this allegation in part.
Respondent admits Complainant was identified for a random drug screen however denies he was subjected to discrimination based on his religion (Muslim).


**Paragraph III**
Respondent denies Complainant was subjected to discrimination based on his religion (Muslim). Respondent is without knowledge or information regarding the remainder of this allegation and leaves Complainant to his proofs.


**Paragraph IV**
Respondent is without knowledge or information and leaves Complainant to his proofs.


**Paragraph V**
Respondent is without knowledge or information and leaves Complainant to his proofs.

Jeremi Taylor v. SEPTA
PHRC Number 202200917
EEOC Number 530-2022-06467

**Paragraph VI**
Respondent admits this allegation.

**Paragraph VII**
Respondent is without knowledge or information and leaves Complainant to his proofs.

**Paragraph VIII**
Respondent admits this allegation.

**Paragraph IX**
Respondent admits Complainant was randomly selected for a drug screen under the auspices of Respondent's procedures and DOT guidelines. However, Respondent denies Complainant was subjected to discrimination based on his religion (Muslim).

**Paragraph X**
Respondent admits Complainant was randomly selected for a drug screen under the auspices of Respondent's procedures and DOT guidelines. However, Respondent denies Complainant was subjected to discrimination based on his religion (Muslim).

**Paragraph XI**
Respondent denies this allegation in part.
Respondent admits the Drug and Alcohol Program Manager intervened and addressed Complainant during the testing process regarding the parameters of completing a drug screen, per Respondent's procedure and DOT guidelines. However, Respondent denies Complainant was subjected to discrimination based on his religion (Muslim).

**Paragraph XII**
Respondent denies this allegation in part.
Respondent admits the Drug and Alcohol Program Manager intervened and addressed Complainant during the testing process regarding the obligations and parameters of completing a drug screen, per Respondent's procedures and DOT regulations. However, Respondent denies that Respondent's Medical staff subjected Complainant to discrimination based on his religion (Muslim).

Jeremi Taylor v. SEPTA
PHRC Number 202200917
EEOC Number 530-2022-06467

**Paragraph XIII**
Respondent admits Complainant was randomly selected for a drug screen under the auspices of DOT guidelines and was advised of said standards. However, Respondent denies Complainant was subjected to discrimination based on his religion (Muslim).

**Paragraph XIV**
Respondent admits this allegation in part.
Respondent admits Complainant was randomly selected for a drug screen under the auspices of Respondent's procedures and DOT guidelines and was advised of said standards. However, Respondent denies Complainant was subjected to discrimination based on his religion (Muslim).

**Paragraph XV**
Respondent admits Complainant provided a letter from his Iman regarding his religious affiliation.

**Paragraph XVI**
Respondent admits Complainant was randomly selected for a drug screen under the auspices of Respondent's procedures and DOT guidelines and was advised of said standards. Respondent further admits Complainant provided a letter from his Iman regarding his religious affiliation.

**Paragraph XVII**
Respondent admits this allegation in part.
Respondent admits Complainant was randomly selected for a drug screen under the auspices of Respondent's procedures and DOT guidelines and was advised of said standards. However, Respondent denies Complainant was subjected to discrimination based on his religion (Muslim).

**Paragraph XVIII**
Respondent admits this allegation in part.
Respondent admits Complainant was randomly selected for a drug screen under the auspices of Respondent's procedures and DOT guidelines and was advised of said standards. However, Respondent denies Complainant was subjected to discrimination based on his religion (Muslim).

Jeremi Taylor v. SEPTA
PHRC Number 202200917
EEOC Number 530-2022-06467

**Paragraph XIX**
Respondent admits this allegation in part.
Respondent admits Complainant was randomly selected for a drug screen under the auspices of Respondent's procedures and DOT guidelines and was advised of said standards. However, Respondent denies Complainant was subjected to discrimination based on his religion (Muslim).

**Paragraph XX**
Respondent denies this allegation in part.
Respondent admits Complainant was randomly selected for a drug screen under the auspices of Respondent's procedures and DOT guidelines and he was advised of said standards. However, Respondent Denies Complainant was subjected to discrimination based on his religion (Muslim).

**Paragraph XXI**
Respondent admits this allegation.
Respondent advised Complainant of Respondent's procedures and DOT guidelines regarding his return to duty. Respondent denies Complainant was subjected to discrimination based on his religion (Muslim).

**Paragraph XXII**
Respondent denies this allegation in part.
Respondent admits Complainant was randomly selected for a drug screen under the auspices of Respondent's procedures and DOT guidelines and he was advised of said standards. However, Respondent denies Complainant was subjected to discrimination based on his religion (Muslim).

**Paragraph XXIII**
Respondent denies Complainant to discrimination based on his religion (Muslim). Respondent is without knowledge or information regarding the remainder of this allegation and leaves Complainant to his proofs.

**Paragraph XXIV**
Respondent is without knowledge or information and leaves Complainant to his proofs.

Jeremi Taylor v. SEPTA
PHRC Number 202200917
EEOC Number 530-2022-06467

**Paragraph XXV**
Respondent denies Complainant was subjected to discrimination based on his religion
(Muslim). Respondent is without knowledge or information regarding the remainder of this
allegation and leaves Complainant to his proofs.

**VERIFICATION**

I hereby verify that the statements contained in this Answer are true and correct
to the best of my knowledge, information, and belief. I understand that false
statements herein are made subject to the penalties of 18 PA.C.S. § 4904, relating
to unsworn falsification to authorities.

1/5/23
-------------------------------
Date

-------------------------------
Anthony Miller,
Manager, EEO & Employee Relations

# EXHIBIT 7

**Letter by Chung, Peter, MD on 8/3/2022**



**Main Line HealthCare**
Physician Network

MAIN LINE HEALTHCARE PRIMARY CARE IN WYNNEWOOD

306 E. LANCASTER AVENUE
SUITE 400
WYNNEWOOD PA 19096
Phone 484-476-7222
Fax  484-476-7853

August 3, 2022

Jeremi M Taylor
7626 Sherwood Road
Philadelphia PA 19151

To Whom It My Concern,

Mr Jeremi Taylor is my patient in Internal Medicine.  He has been my patient since 2013 and I am familiar with his medical conditions.  Jeremi has been informing me of the increased stress he has been feeling from work for the past few months.  On May 26, 2022, Jeremi came into my office with a rash which turned out to be shingles.  Shingles can be brought about in times of increased physical or emotional stress. Also, Jeremi's blood pressure has been difficult to control and I have had to send to a cardiovascular specialist to get a better control over his blood pressure readings.  Increased blood pressure can also be a sign of increased stress in his life.

If you have any questions or concerns, please do not hesitate to call.

Sincerely,

*Peter Chung*

Peter Chung, MD